Roy S. SPRIGGS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 25A03–9512–CR–399.

Court of Appeals of Indiana.

Oct. 4, 1996.

C. Richard Oren, Rochester, for Appellant.

Pamela Carter, Attorney General of Indiana, Preston W. Black, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

STATON, Judge.

Roy S. Spriggs ("Spriggs") appeals his conviction for operating a vehicle with a blood alcohol content ("BAC") of .10% or more, a class D felony[1]. He raises two issues on appeal, which we restate:

---

1. IND.CODE § 9–30–5–1. Violation of IC 9–30–5–1 is a class C Misdemeanor, but was enhanced in this case to a class D felony, pursuant to IND.CODE § 9–30–5–3, because Spriggs was convicted for operating a vehicle while intoxicated within the previous five years.

Spriggs was also charged and convicted of operating a vehicle while intoxicated, a class A Misdemeanor, IND.CODE § 9–30–5–2, which would

I. Whether blood alcohol test results should have been excluded from evidence.

II. Whether he received effective assistance of counsel.

We affirm.

On December 24, 1994, at approximately 3:00 p.m., Spriggs lost consciousness while driving his car in Fulton County near the town of Rochester. Rochester police transported Spriggs to the Woodlawn Hospital, where he received treatment. Hospital staff drew a blood sample from Spriggs at about 3:45 p.m. to aid the attending physician in treating Spriggs. Testing of the sample revealed that Spriggs' BAC was .30%. At approximately 5:30 p.m. a second blood sample was drawn by hospital staff to determine if Spriggs' BAC had dropped to a level which would permit the Rochester police to take custody of him; the second test revealed a BAC of .27%. Rochester police then transported Spriggs to the Fulton County Jail.

Later that evening, a witness came to the Rochester police department and stated that he had seen Spriggs driving erratically, swerving over the entire road, crossing the center line into on-coming traffic, and passing out behind the wheel of his car.

Rochester police informed Spriggs of the implied consent law. Later, Spriggs failed three field sobriety tests. At approximately 9:28 p.m. Spriggs blew a BAC of .14% on a breath analyzer in the Fulton County Jail. Spriggs was arrested and subsequently convicted by a jury of operating a vehicle with a BAC of .10% or more.

I.

*Admissibility of the Blood Alcohol Tests*

■ The first issue Spriggs raises is whether the blood test results of his BAC obtained at the Woodlawn Hospital were properly admitted into evidence. The trial court has broad discretion in ruling on the admissibility of evidence, and its ruling will be disturbed only upon a showing of an abuse of that discretion. *Drake v. State,* 655 N.E.2d 574, 575 (Ind.Ct.App.1995) (citing *Kremer v. State,* 514 N.E.2d 1068, 1073 (Ind. 1987), *reh. denied* ).

■ Spriggs contends that the police officer requesting the BAC information was required to comply with IND.CODE § 9–30–6– 6(g)[2]. Specifically Spriggs argues that this

---

also be enhanced to a class D felony due to Spriggs' prior conviction. Operating a vehicle with a BAC of .10% or more is a lesser included offense of operating a vehicle while intoxicated. *McInchak v. State,* 560 N.E.2d 546, 549 (Ind.Ct. App.1990). The trial judge sentenced Spriggs for conviction of operating a vehicle with a BAC of .10% or more. Judgment was only entered on one charge, and Spriggs was only sentenced on one charge, eliminating double jeopardy problems. Additionally, both charges would have been elevated to a D felony as a result of Spriggs' prior conviction and both charges carry identical sentences. It is only the conviction on which judgment was entered, for operating a vehicle with a BAC of .10% or more, which Spriggs challenges. Spriggs does not raise the sentencing order as an issue. Failure to raise an issue constitutes waiver of that issue. Ind. Appellate Rule 8.3(A)(7). *Golden v. State,* 553 N.E.2d 1219, 1222 (Ind.Ct.App.1990), *trans. denied.*

2. In relevant part IC 9–30–6–6 reads:
    (a) A physician or a person trained in obtaining bodily substance samples and acting under the direction of, or under a protocol prepared by, a physician, who:
      (1) obtains a blood, urine, or other bodily substance sample from a person, regardless of whether the sample is taken for diagnostic

purposes or at the request of a law enforcement officer under this section; or
    (2) performs a chemical test on blood, urine, or other bodily substance obtained from a person; shall deliver the sample or disclose the results of the test to a law enforcement officer who requests the sample or results as part of a criminal investigation. Samples and test results shall be provided to a law enforcement officer even if the person has not consented to or otherwise authorized their release.

\* \* \* \* \* \*

(g) A physician or a person trained in obtaining bodily substance samples and acting under the direction of, or under a protocol prepared by, a physician shall obtain a blood, urine, or other bodily substance sample if the following exist:
    (1) A law enforcement officer requests that the sample be obtained.
    (2) The law enforcement officer has certified in writing the following:
      (A) That the officer has probable cause to believe the person from whom the sample is to be obtained has violated IC 9–30–5.
      (B) That the person from whom the sample is to be obtained has been transported to a hospital or other medical facility.

section requires a law enforcement officer to certify in writing that the person from whom a blood sample is to be drawn was involved in an accident that resulted in the serious bodily injury of another. Spriggs argues that law enforcement's failure to make such a written certification in this case precludes admission of the blood tests into evidence. It is true that a search and seizure failing to comply with the requirements for obtaining evidence set forth in the implied consent statutes is unlawful, requiring exclusion of the evidence obtained. *Justice v. State,* 552 N.E.2d 844, 848 (Ind.Ct.App.1990); *State v. Hunter,* 581 N.E.2d 992 (Ind.Ct.App.1991), *trans. denied.* The interpretation of IC 9–30–6–6 urged by Spriggs has already been considered by this court and rejected.

In *State v. Robbins,* 549 N.E.2d 1107 (Ind.Ct.App.1990), the court considered a claim that BAC evidence should be excluded due to the failure of police to follow subsection (g). There we held that the implied consent laws do not create any rights in a criminal defendant, but instead abrogate a criminal defendant's right to invoke an evidentiary privilege. *Id.* at 1110. The statute was intended to broaden the ability of law enforcement to order hospital personnel to draw a blood sample. *Id.* at 1109 (quoting *Zimmerman v. State,* 469 N.E.2d 11, 17–18 (Ind.Ct.App.1984)). Prior to enactment of subsection (g), a physician was required to provide police with BAC evidence only if the physician had drawn a blood sample. This allowed a reluctant physician to avoid turning such evidence of intoxication over to the State by refusing to draw a blood sample. *Robbins, supra,* at 1110. Subsection (g) fills that gap in the law, providing a statutory mechanism to compel a reluctant physician to draw a blood sample. *Id.* Therefore subsection (g) applies only when a physician refuses to draw a blood sample. *Id. See also Burp v. State,* 612 N.E.2d 169, 173 (Ind.Ct.App.

1993) ("[IC 9–30–6–6] does not create any rights in a criminal defendant but rather limits his right to invoke a privilege."); *Glasscock v. State,* 576 N.E.2d 600, 604 (Ind.Ct. App.1991), *trans. denied* ("Subsection (g) does not apply when the physician is not reluctant to draw the blood sample."); *Walker v. State,* 582 N.E.2d 877, 880 (Ind.Ct.App. 1991); *Hurt v. State,* 553 N.E.2d 1243, 1246 (Ind.Ct.App.1990) ("For purposes of ... [IC 9–30–6–6] the legislature has abolished the physician-patient privilege ...").

In this case, as in *Robbins,* the physician was not reluctant to draw a blood sample. The attending physician ordered the first blood sample drawn for treatment purposes, and a second blood sample drawn to see whether Spriggs' BAC had decreased to a level at which the police department would accept custody of Spriggs. These BAC results where given to the investigating police officer when requested. As in *Robbins,* there was no reluctance on the part of any of the medical staff to draw a blood sample or provide the test results to law enforcement. Also like *Robbins,* therefore, subsection (g) has no application in this case.

Because subsection (g) does not apply to the facts of this case, no statutory violation occurred due to failure to comply with its strictures. As our Indiana Supreme Court has held, BAC evidence is clearly relevant to prosecutions under IC 9–30–5–1 and IC 9–30–5–2, and should be admitted. *Mullins v. State,* 646 N.E.2d 40, 48 (Ind.1995). *See also* IND.CODE § 9–30–6–15. Accordingly, admission of the BAC test results was not an abuse of discretion and the trial court's evidentiary ruling admitting the BAC test results will not be disturbed by this court.[3]

## II.

### *Ineffective Assistance of Counsel*

Spriggs next argues that he was denied effective assistance of counsel. To prevail on

---

(C) That the person from whom the sample is to be obtained has been involved in a motor vehicle accident that resulted in the serious bodily injury or death of another. (D) That the accident that caused the serious bodily injury or death of another occurred not more than three (3) hours before the time the sample is requested.

(3) Not more than the use of reasonable force is necessary to obtain the sample....

**3.** Spriggs also contends that in the absence of the BAC test results there would be insufficient evidence to support his conviction. Since we affirm the trial court's ruling to admit the BAC evidence, we need not address this issue.

a claim of ineffective assistance of counsel, a defendant must show that: (1) his counsel's performance fell below an objective standard of reasonableness; and (2) but for counsel's deficient performance the result of the proceedings would have been different. *Fugate v. State,* 608 N.E.2d 1370, 1372 (Ind.1993). Counsel is presumed competent and the defendant must present strong and convincing evidence to rebut this presumption. *Id.*

Judicial scrutiny of counsel's performance is highly deferential and should not be exercised through the distortions of hindsight. Isolated poor strategy, inexperience, or bad tactics do not necessarily amount to ineffectiveness of counsel. *Bellmore v. State,* 602 N.E.2d 111, 123 (Ind.1992), *reh. denied* (citing *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

The basis of Spriggs' argument is that the BAC tests performed at the hospital were inadmissible. Because we have already concluded the BAC evidence was properly admitted, Spriggs cannot show that he was prejudiced by any alleged deficiency in his counsel's performance. With or without the breath analysis, two blood tests, revealing BAC's of .30% and .27%, were in evidence before the jury. Even had Spriggs' counsel objected to the breath analysis and this evidence been excluded, ample evidence was introduced to support conviction. We need not consider the first prong of the test for ineffective assistance of counsel as Spriggs cannot meet his burden of showing that but for counsel's failure to object the result of the proceedings would have been different.

Affirmed.

SHARPNACK, C.J., and GARRARD, J., concur.